

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2013 JAN 11   AM 10: 24

CLERK_____
SO. DIST. OF GA.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | **INDICTMENT NO.** ____ |
| ) | **UNDER SEAL** |
| ) | |
| **v.** ) | **VIO: 18 U.S.C. § 1594** |
| ) | **Conspiracy to Engage in** |
| **JOAQUIN MENDEZ-HERNANDEZ,** ) | **Sex Trafficking** |
| **a/k/a "El Flaco,"** ) | |
| **LUISA CAPILLA-LANCHO,** ) | **18 U.S.C. § 1591** |
| **a/k/a "Marisol,"** ) | **Sex Trafficking** |
| **JUAN CARLOS PENA,** ) | |
| **DAVID REYES,** ) | **18 U.S.C. § 371** |
| **SYLVIA BARRERA,** ) | **Conspiracy to Travel in Interstate** |
| **ANTONIO RAMIREZ-CATALAN,** ) | **Commerce for Purposes of** |
| **a/k/a/ "JOEL,"** ) | **Prostitution** |
| **FNU LNU, "DONA ROSA,"** ) | |
| **FNU LNU, "PELUQILLAS,"** ) | **18 U.S.C. § 2421** |
| **FNU LNU, "ROGER,"** ) | **Travel in Interstate Commerce for** |
| **a/k/a "Juan De Dios,"** ) | |
| **a/k/a "Juan Diablo,"** ) | **Purposes of Prostitution** |
| **DANIEL RIBON-GONZALEZ,** ) | |
| **MARISOL FERRERIRAS, and** ) | **18 U.S.C. § 1951** |
| **PARESH PATEL** ) | **Use of a Facility in Interstate** |
| ) | **Commerce to Promote the** |
| ) | **Carrying on of a Business** |
| ) | **Involving Prostitution** |
| ) | |

**THE GRAND JURY CHARGES:**

**COUNT ONE**
*Conspiracy to Engage in Sex Trafficking*
18 U.S.C. § 1594

1.     Beginning at a time unknown to the grand jury, but at least from in our about

2008, and continuing through January 2013, in Chatham County, within the Southern District of

Georgia, and elsewhere, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"**

**LUISA CAPILLA-LANCHO, a/k/a "Marisol," JUAN CARLOS PENA, and "ROGER,"**

a/k/a "Juan De Dios," a/k/a "Juan Diablo," being aided and abetted by others, did knowingly combine, conspire, confederate, and agree with each other and others to knowingly and intentionally recruit, entice, harbor, transport, provide and obtain by any means a person and persons, known and unknown, to the Grand Jury, in and affecting interstate and foreign commerce, and did benefit financially and by receiving a thing of value from participation in a venture engaged in such acts, knowing and in reckless disregard of the fact that force, fraud and coercion would be used to cause such person and persons to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a)(1), 1591(a)(2), and 1591(b)(2).

### Manner and Means of the Conspiracy

2.      It was part of the conspiracy for one or more members of the conspiracy:

a.      To coordinate the transportation of women who had entered the United States illegally to Savannah, Georgia and elsewhere for the purpose of engaging in prostitution in Savannah, Georgia and elsewhere.

b.      To recruit women to work as prostitutes for the organization.

c.      To provide false and misleading information to the women to entice them to come to and remain in the United States.

d.      To threaten and force women to commit acts of prostitution.

e.      To harbor these women by providing food and housing for the women while the women worked as prostitutes.

f.      To use communication facilities, including cellular telephones to communicate with other members of the conspiracy about the transportation of women, and to coordinate meetings between the women and people who would pay for sex, referred hereinafter as "Johns."

g.     To use communication facilities, including cellular telephones, to send photographs of women, so members of the conspiracy could select who to use as a prostitute.

h.     To transport women to various locations in the Southern District of Georgia and elsewhere, for the women to engage in sexual activity.   At times during this conspiracy, one woman would commit over 30 acts of prostitution in one day, at the direction of one or more members of the conspiracy.

i.     To typically have at least one woman working as a prostitute on a weekly basis.

j.     To accompany the women to the location to engage in sexual activity and collect payment for services rendered.

k.     To collect a portion of the money paid by a "John" to the prostitute.

l.     To pay expenses to facilitate the prostitution.

m.     To trade women and exchange women with other members of the conspiracy often after one week, to conspirators in other jurisdictions, including the states of Florida, North Carolina and South Carolina.

## Object of the Conspiracy

3.     It was the object of the conspiracy to make money by engaging in sex trafficking and interstate prostitution.

## Overt Acts

4.     In furtherance of the conspiracy, and to accomplish the objects thereof, at least one of the conspirators committed or caused to be committed at least one of the following overt acts, among others, in the Southern District of Georgia and elsewhere:

a.      Beginning at a time unknown to the Grand Jury, but between 2002 and December 26, 2012, the exact date being unknown to the Grand Jury, Defendant **JUAN CAROLS PENA** brought a Nicaraguan woman who was living in the state of Florida to the State of Georgia under the false pretenses that the woman would be working in his nonexistent cleaning business.  Defendant **JUAN CARLOS PENA** trained the Nicaraguan woman to be a prostitute in his prostitution business.

b.      At a time unknown to the Grand Jury, but at least from in or about November 2009, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** introduced Jane Doe #9, an individual known to the Grand Jury, to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** to work as a prostitute.  Jane Doe #9 worked as a prostitute for Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** for seven days at a time on three separate occasions from November 2009 through January 2011.

c.      In or about December 2010, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported a prostitute to a residence in Savannah Georgia so she could engage in prostitution with multiple men.

d.      In or about October 2011, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** recruited Jane Doe #1, an individual known to the Grand Jury, to work as a prostitute within his criminal organization.

e.      In or about October 2011, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** told Jane Doe #1 that she needed to service 25 clients per day or she would be sent home to Mexico.

f.      In or about October 2011, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** provided housing for Jane Doe #1 while she worked as a prostitute.

g.      In or about October 2011, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** and other members of the conspiracy transported Jane Doe #1 to various places so Jane Doe #1 could engage in prostitution.

h.      In or about October 2011, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** collected money from people who engaged in prostitution with Jane Doe #1.

i.      In or about October 2011, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** told another unknown member of the conspiracy that twenty-four Mexican females, some very young, were trafficked from Mexico into the United States and were harbored in Charlotte, North Carolina because Atlanta and New York were "burnt." Thereafter, other members of the conspiracy, including Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** would transport these women to work as prostitutes.

j.      In or about January 2012, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** brought Jane Doe #1, from Savannah, Georgia to the state of Florida to work as a prostitute.

k.      On or about July 27, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** provided housing for Jane Doe #11, an individual unknown to the Grand Jury, while she worked as a prostitute.

l.    On or about July 27, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported Jane Doe #11 to different locations in Savannah, Georgia, to engage in prostitution.

m.    On or about September 2, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** traveled from Georgia to South Carolina to exchange prostitutes with another member of the conspiracy.

n.    In or about late October, early November 2012, Defendant **"Dona Rosa"** transported and promoted the use of Jane Doe #2, an individual known to the Grand Jury, to engage in prostitution.

o.    Beginning at a time unknown to the grand jury but at least from in or about November 2012 and January 2013, Defendant **SYLVIA BARRERA** transported prostitutes, purchased supplies for prostitutes and rented hotel rooms to facilitate the prostitution.

p.    On or about November 1, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used communications facilities, including cellular telephones, to send pictures of women, so members of the conspiracy could select which woman they wanted to use as a prostitute.

q.    On or about November 1, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used communications facilities, including cellular telephones, to coordinate the scheduling and transportation of prostitutes between Defendants **JUAN CARLOS PENA and JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

r.    On or about November 3, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used a cellular telephone to coordinate the delivery of a prostitute.

s.    On or about November 3, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported a prostitute to the Nassau Woods Trailer Park, Savannah, Georgia, to engage in prostitution.

t.    On or about November 4, 2012, Defendants **"Dona Rosa," and JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to discuss the transportation of a female prostitute, Jane Doe #2 from Defendant **"Dona Rosa's"** care and custody to Defendant **JOAQUIN MENDEZ-HERNANDEZ a/k/a "El Flaco's"** care and custody, to be used to engage in prostitution.

u.    On or about November 5, 2012, Defendant **"Dona Rosa"** traveled to Savannah, Georgia for the purpose of delivering Jane Doe #2 to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

v.    From on or about November 5, 2012, until on or about November 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** provided harbor for Jane Doe # 2 while she worked as a prostitute for him.

w.    From on or about November 5, 2012, until on or about November 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported Jane Doe #2 to various locations to engage in prostitution.

x.    On or about November 6, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** used a communication facility, cellular telephones, to discuss a female prostitute, Jane Doe #2, who

believed she was pregnant.  During the conversation, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** explained to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** that Jane Doe #2 believed she was two months pregnant and was in the restroom vomiting.  Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** laughed at the situation.

       y.     On or about November 7, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used communications facilities, including cellular telephones, to coordinate the scheduling and transportation of prostitutes between Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

       z.     On or about November 11, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **JUAN CARLOS PENA** used cellular telephones to update each other on the status of some of the women they were using as prostitutes.

       aa.     On or about November 12, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **JUAN CARLOS PENA** used cellular telephones to update each other on the status of some of the women they were using as prostitutes.

       bb.     On November 14, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to coordinate the scheduling and transportation of prostitutes, between Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

       cc.     On or about November 14, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," JUAN CARLOS PENA,** and **SYLVIA BARRERA** used

telephones to coordinate the transport of Jane Doe #2 from Savannah, Georgia to another location.

       dd.    On or about November 14, 2012 and November 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** travelled to Bonaire, Georgia to transfer a prostitute, Jane Doe #2 to Defendant **SYLVIA BARRERA** to be used as a prostitute.

       ee.    On or about November 15, 2012, Defendant **SYLVIA BARRERA** transported Jane Doe #2 to Defendant **JUAN CARLOS PENA.**

       ff.    On or about November 15, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to coordinate the scheduling and transportation of prostitutes, between Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

       gg.    On or about November 17, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to coordinate the scheduling of prostitutes between Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

       hh.    On or about November 22, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to send pictures of women, so members of the conspiracy could select which woman they wanted to use as a prostitute.

       ii.    On or about November 24, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used a cellular telephone to coordinate the transfer of a prostitute, Jane Doe #4, an individual known to the Grand Jury, from Savannah, Georgia to

Columbia, South Carolina, where Jane Doe #4, would be transferred to Defendant **ANTONIO RAMIRIZ-CATALAN, a/k/a "Joel,"** a pimp who operates in Monroe, North Carolina.

jj.     On or about November 25th, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and ANTONIO RAMIREZ-CATALAN, a/k/a "Joel,"** transported Jane Doe #4 in interstate commerce for the purpose of attempting to use her as a prostitute.

kk.     On or about December 10, 2012, Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** used cellular telephones to coordinate the scheduling of prostitutes between Defendants **JUAN CARLOS PENA** and **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

ll.     On or about December 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** forced a female prostitute, Jane Doe #6, an individual known to the Grand Jury, to engage in prostitution activities.

mm.     On or about December 17, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** used cellular telephones to coordinate the transportation of a prostitute from the state of South Carolina to the State of Georgia by Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

nn.     On or about December 20, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," and "Dona Rosa"** used cellular telephones to discuss that Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco"** was working with a Jane Doe #7, an individual known to the Grand Jury, a female prostitute from the state of South Carolina in the state of Georgia.

oo.     On or about December 26, 2012, Defendant **JUAN CARLOS PENA** used a cellular telephone to explain to an unidentified male that he was the boss of a prostitution business. Defendant **JUAN CARLOS PENA** further explained that he used a variety of young Mexican, Puerto Rican and Dominican females, under the age of twenty-seven, to work as prostitutes on a weekly basis for his business.

pp.     On or about December 30, 2012, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **"DONDA ROSA,"** used cellular telephones to update each other on the status of some of the women they were using as prostitutes.

qq.     On or about January 1, 2013, Defendants **JUAN CARLOS PENA** and **"ROGER," a/k/a "Juan De Dios," a/k/a "Juan Diablo,"** used cellular telephones to discuss a female prostitute, Jane Doe #10, an individual known to the Grand Jury, who said that Defendant **"ROGER," a/k/a "Juan De Dios," a/k/a "Juan Diablo,"** and other members of the conspiracy raped her.

rr.     On or about January 2, 2013, Defendants **JUAN CARLOS PENA** and **"ROGER," a/k/a "Juan De Dios," a/k/a "Juan Diablo,"** used cellular telephones to send pictures of women, so members of the conspiracy could select which woman they wanted to use as a prostitute.

All done in violation of Title 18, United States Code, Sections 2 and 1594(c).

## COUNT TWO
### *Sex Trafficking*
18 U.S.C. § 1591

5.     The allegations contained in paragraphs 1 through 4 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

6.      On or about December 15, 2012, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** aided and abetted by other individuals known and unknown to the Grand Jury, did knowingly and intentionally recruit, entice, harbor, transport, provide and obtain by any means a person, to wit, Jane Doe #6, individual known to the Grand Jury, in and affecting interstate and foreign commerce, and did benefit financially and by receiving a thing of value from participation in a venture engaged in such acts, knowing and in reckless disregard of the fact that force, fraud and coercion would be used to cause such person to engage in a commercial sex act.

All done in violation of Title 18, United States Code, Sections 2, 1591(a)(1), 1591(a)(2), and 1591(b)(1).

### COUNT THREE
*Conspiracy to Transport a Person in Interstate*
*Commerce for Purposes of Prostitution*
18 U.S.C. §§ 371 & 2421

7.      The allegations contained in paragraphs 1 through 6 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

8.      Beginning at a time unknown to the grand jury, but at least from in or about 2008, and continuing through January 2013, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco," LUISA CAPILLA-LANCHO, a/k/a "Marisol," JUAN CARLOS PENA, DAVID REYES, SYLVIA BARRERA, ANTONIO RAMIREZ-CATALAN, a/k/a "Joel," "DONA ROSA," "PELUQILLAS," "ROGER," a/k/a "Juan De Dios," a/k/a "Juan Diablo," DANIEL RIBON-GONZALEZ, and MARISOL FERRERIRAS,** aided and abetted by others, did willfully and knowingly combine, conspire, confederate, and agree with each other and other individuals known and unknown to the Grand Jury, to commit certain offenses against the United

States, that is, travel in interstate commerce for purposes of prostitution, in violation of Title 18, United States Code, Section 2421.

### Manner and Means of the Conspiracy

9. It was part of the conspiracy for one or more members of the conspiracy:

a. To coordinate the transportation of women who had entered the United States illegally to Savannah, Georgia and elsewhere for the purpose of engaging in prostitution in the Savannah, Georgia area and elsewhere.

b. To transport these women to and from Savannah, Georgia and elsewhere to cause these women to engage in prostitution in the Savannah, Georgia area and elsewhere.

c. To harbor these women in various residences in the area, including but not limited to 126 Tibet Avenue, Apartment E-8, in Savannah, Georgia.

d. To engage in sexual activities with these women in the Savannah, Georgia area and elsewhere.

### Object of the Conspiracy

10. It was the object of the conspiracy to make money by engaging in interstate prostitution.

### Overt Acts

11. In furtherance of the conspiracy, and to accomplish the objects thereof, at least one of the conspirators committed or caused to be committed at least one of the following overt acts, among others, in the Southern District of Georgia and elsewhere:

a. In or about January 2012, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** brought Jane Doe #1, an individual known to the Grand Jury, from Savannah, Georgia to the state of Florida to work as a prostitute.

b.     On or about November 5, 2012, Defendant **"DONA ROSA"** transported Jane Doe #2, an individual known to the Grand Jury, to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** in Savannah, Georgia to allow Jane Doe #2 to work as a prostitute for Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco."**

c.     On or about November 5, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** from the Savannah, Georgia area to Defendant **"PELUQILLAS"** at exit 57 on Interstate 95 in South Carolina.   Defendant **"PELUQILLAS"** then transported Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** to the Columbia, South Carolina area where Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** worked as a prostitute.

d.     On or about November 14, 2012 and continuing through on or about November 15, 2012, Defendant **JUAN CARLOS PENA** contacted Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **SYLVIA BARRERA** to coordinate the transportation and delivery of Jane Doe #2 between Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **JUAN CARLOS PENA.**

e.     On or about November 14, 2012 and continuing through on or about November 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported Jane Doe #2 from the Savannah, Georgia area to Defendant **SYLVIA BARRERA** at exit 24 on Interstate 16 in Jeffersonville, Georgia.

f.     On or about November 15, 2012, Defendant **MARISOL FERRERIRAS** transported a female prostitute, Jane Doe #3, an individual known to the Grand Jury, from the Atlanta, Georgia area to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** at exit 24 on Interstate 16 in Jeffersonville, Georgia.   Thereafter, Defendant **JOAQUIN**

MENDEZ-HERNANDEZ, a/k/a "El Flaco," transported Jane Doe #3 to the Savannah, Georgia area where Jane Doe #3 engaged in prostitution.

g.      On or about November 19, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** met with Defendant **"ROGER" a/k/a "Juan De Dios," a/k/a "Juan Diablo,"** at exit 24 on Interstate 16 in Jeffersonville, Georgia to pick up a female prostitute, Jane Doe #4, an individual known to the Grand Jury.   Thereafter, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported Jane Doe #4 to the Savannah, Georgia area where Jane Doe #4 engaged in prostitution.

h.      On or about November 19, 2012, Defendant **"DONA ROSA"** travelled to Defendant **JOAQUIN MENDEZ-HERNANDEZ'S, a/k/a "El Flaco's,"** residence located at 126 Tibet Avenue, Apartment E-8, in Savannah, Georgia to pick-up Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol."**  Thereafter, Defendant **"DONA ROSA"** transported Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** to the Baxley, Georgia area where Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** engaged in prostitution.

i.      On or about November 25, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported a female prostitute, Jane Doe #4, from the state of Georgia to Defendant **ANTONIO RAMIREZ-CATALAN, a/k/a "Joel,"** in the state of South Carolina to exit 119 on Interstate 26 near Columbia, South Carolina.   Thereafter, Defendant **ANTONIO RAMIREZ-CATALAN, a/k/a "Joel,"** transported Jane Doe #4 into the state of North Carolina.

j.      On or about November 26, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** transported a female prostitute, Jane Doe #5, an individual known to the Grand Jury, from the Savannah, Georgia area to Defendant **DANIEL RIBON-**

GONZALEZ at exit 116 on Interstate 16 in Register, Georgia. Thereafter, Defendant **DANIEL RIBON-GONZALEZ** transported Jane Doe #5 to the Augusta, Georgia area.

      k.      On or about December 15, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** forced a female prostitute, Jane Doe #6, an individual known to the Grand Jury, to engage in prostitution activities.

      l.      On or about December 22, 2012, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** contacted Defendant **DAVID REYES** to coordinate the transportation and delivery of a female prostitute, Jane Doe #7, an individual known to the Grand Jury, from Savannah, Georgia to Columbia, South Carolina.

      m.      On or about December 23, 2012, Defendant **DAVID REYES** travelled to Defendant **JOAQUIN MENDEZ-HERNANDEZ'S, a/k/a "El Flaco's,"** residence located at 126 Tibet Avenue, Apartment E-8, in Savannah, Georgia, picked up Jane Doe #7 at Defendant **JOAQUIN MENDEZ-HERNANDEZ'S, a/k/a "El Flaco's,"** residence and transported Jane Doe #7 to Columbia, South Carolina.

      n.      On December 27, 2012, Defendant **"ROGER," a/k/a "Juan De Dios," a/k/a "Juan Diablo,"** transported a female prostitute, Jane Doe #8, an individual known to the Grand Jury, from Atlanta, Georgia to Defendant **JUAN CARLOS PENA'S** residence in Bonaire, Georgia.

      o.      On December 30, 2012, Defendant **JUAN CARLOS PENA** contacted Defendant **SYLVIA BARRERA** to coordinate the transportation and delivery of a female prostitute, Jane Doe #8, from Bonaire, Georgia to Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** at exit 51 on Interstate 16 in Dublin, Georgia.

      All done in violation of Title 18, United States Code, Sections 2 and 371.

## COUNT FOUR
*Travel in Interstate Commerce for Purposes of Prostitution*
18 U.S.C. § 2421

12.     The allegations contained in paragraphs 1 through 11 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

13.     In or about January, 2012, the exact date being unknown to the Grand Jury, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendant **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** aided and abetted by others known and unknown to the Grand Jury, did knowingly transport Jane Doe #1, an individual known to the Grand Jury, from the state of Georgia to the state of Florida, in interstate commerce, to engage in prostitution, and in sexual activity for which any person can be charged with a criminal offense.

All done in violation of Title 18, United States Code, Sections 2 and 2421.

## COUNT FIVE
*Travel in Interstate Commerce for Purposes of Prostitution*
18 U.S.C. § 2421

14.     The allegations contained in paragraphs 1 through 13 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

15.     On or about November 5, 2012, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendant **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** aided and abetted by others known and unknown to the Grand Jury, did knowingly transport **LUISA CAPILLA-LANCHO, a/k/a "Marisol,"** from the state of Georgia to the State of South Carolina, in interstate commerce, to engage in prostitution, and in sexual activity for which any person can be charged with a criminal offense.

All done in violation of Title 18, United States Code, Sections 2 and 2421.

## COUNT SIX
*Travel in Interstate Commerce for Purposes of Prostitution*
18 U.S.C. § 2421

16.     The allegations contained in paragraphs 1 through 15 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

17.     On or about November 25, 2012, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **ANTONIO RAMIREZ-CATALAN, a/k/a "Joel,"** aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly transport Jane Doe #4, an individual known to the Grand Jury, from the state of Georgia to the state of South Carolina, in interstate commerce, to engage in prostitution, and in sexual activity for which any person can be charged with a criminal offense.

All done in violation of Title 18, United States Code, Sections 2 and 2421.

## COUNT SEVEN
*Travel in Interstate Commerce for Purposes of Prostitution*
18 U.S.C. § 2421

18.     The allegations contained in paragraphs 1 through 17 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

19.     On or about December 23, 2012, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendants **JOAQUIN MENDEZ-HERNANDEZ, a/k/a "El Flaco,"** and **DAVID REYES** aided and abetted by each other and others known and unknown to the Grand Jury, did knowingly transport Jane Doe #7, an individual known to the Grand Jury, from the state of Georgia to the state of South Carolina, in interstate commerce, to engage in prostitution, and in sexual activity for which any person can be charged with a criminal offense.

All done in violation of Title 18, United States Code, Sections 2421 and 2.

### COUNT EIGHT
*Use of a Facility in Interstate Commerce to Promote*
*the Carrying on of a Business Involving Prostitution*
18 U.S.C. § 1952

20.     The allegations contained in paragraphs 1 through 19 of the Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

21.     On or about November 9, 2012, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendant **PARESH PATEL,** aided and abetted by other individuals known and unknown to the Grand Jury, used a facility in interstate commerce, that is, a cellular telephone, with the intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, said unlawful activity being prostitution, which constitutes a violation of the laws of the state of Georgia, and thereafter did perform and attempt to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

All done in violation of Title 18, United States Code, Sections 2 and 1952(a)(3)(A).

### FORFEITURE ALLEGATION

22.     The allegations contained in Counts One through Eight of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to Title 18 United States Code, Sections 981(a)(1)(C), 1594(b)(2) and 2428, as incorporated by Title 28 United States Code, Section 2461.

23.     Upon conviction of Counts One through Eight of this Indictment, the named Defendants shall forfeit to the United States of America, pursuant to Title 18 United States Code,

Sections 981(a)(1)(C), 1594(b)(2) and 2428, as incorporated by Title 28 United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

24. If any property subject to forfeiture as a result of any act or omission of the Defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21 United States Code, Section 853(p), as incorporated by Title 28 United States Code, Section 2461.

All pursuant to Title 18 United States Code, Sections 981(a)(1)(C), 1594(b)(2) and 2428, as incorporated by Title 28 United States Code, Section 2461.

A True Bill.

Foreperson

Edward J. Tarver
United States Attorney

James D. Durham
First Assistant United States Attorney

Brian T. Rafferty
Assistant United States Attorney
Criminal Division Chief

E. Greg Gilluly*
Assistant United States Attorney

Tania D. Groover*
Assistant United States Attorney
*Denotes Lead Counsel